**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Sheryl Rae Lightfoot,                                                              Civil No. 13-2985 (DWF/JJK)

              Plaintiff,

v.                                                                                   **MEMORANDUM**
                                                                                    **OPINION AND ORDER**

Sally Jewell as Secretary of the Department
of the Interior, or her successor; United
States Department of the Interior; United
States; Shakopee Mdewakanton Sioux
Community; and Kenneth Jo Thomas,

              Defendants.

_____

Erick G. Kaardal, Esq., and William F. Mohrman, Esq., Morhman & Kaardal, P.A., counsel for Plaintiff.

Bahram Samie, Assistant United States Attorney, United States Attorney's Office, counsel for Defendants Sally Jewell as Secretary of the Department of the Interior, or her successor; United States Department of the Interior; and United States.

Gregory S. Paulson, Esq., and Kurt V. BlueDog, Esq., BlueDog, Paulson & Small, P.L.L.P.; and Richard A. Duncan, Esq., and Christina Martenson, Esq., Faegre Baker Daniels LLP, counsel for Defendant Shakopee Mdewakanton Sioux Community.

Gary A. Debele, Esq., Walling, Berg & Debele, P.A., counsel for Defendant Kenneth Jo Thomas.

_____

**INTRODUCTION**

      This matter is before the Court on a Motion for a Temporary Restraining Order brought by Plaintiff Sheryl Rae Lightfoot against Defendants Shakopee Mdewakanton Sioux Community and Kenneth Jo Thomas (not the United States Defendants: Sally

Jewell as Secretary of the Department of the Interior, or her successor; United States Department of the Interior; and United States). (Doc. No. 21.) For the reasons set forth below, and articulated by the Court at the hearing on the Motion for a Temporary Restraining Order, the Court denies the motion.

## BACKGROUND

Plaintiff Sheryl Rae Lightfoot ("Lightfoot") and Defendant Kenneth Jo Thomas ("Thomas") married on the grounds of the Shakopee Mdewakanton Sioux (Dakota) Community Reservation in August 1996. (Doc. No. 25, Kaardal Decl. ¶ 4, Exs. 3 & 10.) Thomas has been an enrolled member of the Shakopee Mdewakanton Sioux (Dakota) Community (the "SMSC") since 1972. (Kaardal Decl. ¶ 4, Ex. 3.) Lightfoot is not a member of the SMSC; she is an enrolled member of the Keweenaw Bay Indian Community, Lake Superior Band of Chippewa. (Doc. No. 24, Lightfoot Decl. ¶ 5.) Lightfoot and Thomas have two children together, both of whom they adopted from China. (*Id*. ¶¶ 10-11.) They adopted one child in August 2000 and one child in November 2003. (*Id*.) The parties are now both seeking a divorce. Lightfoot filed for divorce in the British Columbia Supreme Court on September 19, 2013. (Kaardal Decl. ¶ 4, Ex. 3.) Lightfoot currently resides in British Columbia with both children. (*Id*.) Thomas filed for divorce in the Tribal Court of the SMSC ("SMSC Tribal Court") on October 16, 2013. (Kaardal Decl. ¶ 4, Ex. 10.) Thomas currently resides in Minnesota on SMSC property. (*Id.*)

The parties' marital history prior to the divorce filings is somewhat in dispute. Generally, it is agreed that the parties lived in Minnesota together until sometime in the

summer of 2009 when they moved to British Columbia so Lightfoot could pursue a tenure-track professor position at the University of British Columbia. (Lightfoot Decl. ¶ 5; Kaardal Decl. ¶ 4, Ex. 3.) The children began attending school in British Columbia at the beginning of the 2009-2010 school year. (Lightfoot Decl. ¶ 5; Doc. No. 34, Ex. D.) It appears that the family returned to Minnesota for each summer, but that the children were in school in British Columbia for each school year from 2009 through the present. (*See* Lightfoot Decl. ¶ 5; Doc. No. 34, Ex. D.) At some point in and around 2011, Thomas remained in Minnesota for approximately one year to care for his sister who was dying from terminal cancer. (*See* Lightfoot Decl. ¶ 5; Doc. No. 34, Ex. D.) Thomas asserts that apart from that year, he was the primary caregiver for the children. (Doc. No. 34, Ex. D.) The parties agree that the children are not eligible for enrollment with SMSC, but Thomas asserts they self-identify as members of the SMSC and have fully participated in SMSC cultural life, while Lightfoot disagrees. (Kaardal Decl. ¶ 4, Exs. 3 & 10.)

Thomas is unemployed, but he receives per capita payments from the SMSC in the amount of approximately $64,000 per month. (Kaardal Decl. ¶ 4, Exs. 3 & 10.) The parties maintain a number of properties in the United States, including a house on SMSC land. (*Id.*) The home in British Columbia is rented. (*Id.*) Thomas asserts that the SMSC property and house are the "parties' primary residence." (Kaardal Decl. ¶ 4, Ex. 3.)

The divorce cases in the British Columbia Supreme Court and in the SMSC Tribal Court have progressed since they were each filed. For purposes of this motion, the most important events include:

3

(1) In British Columbia:

- Thomas was served with a Notice of Family Claim from the British Columbia Supreme Court on October 1, 2013;

- Thomas disputed the jurisdiction of the British Columbia Supreme Court with a filing on October 31, 2013;

- Lightfoot filed an Application in the British Columbia Supreme Court pertaining to the adjudication of the dissolution and related issues;

- the British Columbia Supreme Court held a hearing on October 17, 2013;

- the British Columbia Supreme Court issued an Order "without prejudice to either party's argument as to the proper jurisdictional forum" regarding the Application and the Hearing.  The Order was issued on November 1, 2013 and temporarily addresses life insurance, child maintenance, and spousal support;

- Thomas appealed the October 17, 2013 Order of the British Columbia Supreme Court; and

- a hearing before the British Columbia Supreme Court on these matters was set for December 11, 2013, but has been moved to February.

(2) In the SMSC Tribal Court:

- Thomas moved the Tribal Court Regarding Jurisdiction and for Temporary Relief on matters related to the dissolution; and

- the Tribal Court issued a Scheduling Order on November 29, 2013 setting a hearing for December 10, 2013.[1]

---

[1] The Tribal Court heard the matter on December 10, 2013, and took it under advisement.  The Tribal Court has not yet issued any order or findings in this matter.

Additionally, the parties, this Court, and Judge Jacobson of the SMSC Tribal Court held a conference call on the morning of December 10, 2013 to ensure open communication between the courts as these issues proceed.  This Court and Judge

(Footnote Continued on Next Page)

(*See* Kaardal Decl. ¶ 4, Exs. 3 & 10; Lightfoot Decl. ¶¶ 1, 2, 14; Doc. No. 34, Exs. A-G.)

Because the parties have filed for divorce in both British Columbia and with the SMSC Tribal Court, jurisdiction over the divorce and all related matters is in dispute. Lightfoot claims that the SMSC Tribal Court cannot and should not exercise jurisdiction over the divorce. Lightfoot asserts that the SMSC Domestic Relations Code which was adopted in 1995, and was approved (per required procedure) by the Department of the Interior, is in conflict with 28 U.S.C. § 1360 and, as a result, with state law. Lightfoot claims a conflict exists as a matter of law and that there is also a conflict regarding how the SMSC Tribal Court would address issues of child custody, and especially spousal and child support as compared to a Minnesota state court. Lightfoot is particularly concerned with the provisions of the SMSC Domestic Relations Code that would deem Thomas's per capita payments to be non-marital property, whereas Minnesota state courts would consider those payments to be income or marital property to be divided equitably. Defendants disagree. Defendants argue that the SMSC Tribal Court has either exclusive or concurrent jurisdiction and that Lightfoot's claims lack any valid legal basis. Defendants have also raised other jurisdictional issues, including issues of sovereign immunity.

---

(Footnote Continued From Previous Page)
Jacobson spoke again on December 11, 2013, following the SMSC Tribal Court hearing on December 10, 2013. Finally, on December 11, 2013, this Court also spoke with Justice Lauri Ann Fenlon from the British Columbia Supreme Court regarding these proceedings. All three courts intend to participate in a conference call on these matters as soon as practicable.

In her Complaint, Lightfoot asserts the following claims: (1) declaratory judgment that the Department of Interior's approval of the SMSC Domestic Relations Code in 1995 violated 28 U.S.C. § 1360; (2) violation of 28 U.S.C. § 1360 by SMSC with its adoption and enforcement of the SMSC Domestic Relations Code; (3) injunction against the Department of Interior in light of the inconsistency between the SMSC Domestic Relations Code and state law; and (4) attorney fees. (Doc. No. 1, Compl. ¶¶ 53-95.)

Lightfoot moved for a temporary restraining order prior to the hearing that occurred in the SMSC Tribal Court on December 10, 2013. The Court ruled from the bench on December 9, 2013, prior to the SMSC Tribal Court hearing, and the Court now further addresses the motion for a temporary restraining order below.

## DISCUSSION

The Court considers four primary factors in determining whether a temporary restraining order should be granted: (1) the threat of irreparable harm to the moving party; (2) the likelihood of the moving party's success on the merits; (3) the state of balance between the alleged irreparable harm and the harm that granting the injunction would inflict on the other party; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). This analysis was designed to determine whether the Court should intervene to preserve the status quo until it decides the merits of the case. *Id.* In each case, the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *See West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). A preliminary injunction is an extraordinary remedy. *See Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,* 815 F.2d 500, 503

(8th Cir. 1987).  The party requesting the injunctive relief bears the "complete burden" of proving all of the factors listed above.  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

### A. Irreparable Harm

The movant must establish that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages.  *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986).  In her briefing, Lightfoot contends that if the SMSC and its Tribal Court moved forward with the December 10, 2013[2] hearing, the minor, adopted, and non-Indian children living in British Columbia will be irreparably harmed.  Lightfoot argues that by simply exercising jurisdiction and applying the SMSC Domestic Relations Code, the SMSC Tribal Court will irreparably harm the parties, and particularly the children, because the SMSC Tribal Court will be furthering a "jurisdictional clash."  (Doc. 23, Pl. Br. at 25.)  However, at its core, what Lightfoot really appears to be arguing is that this jurisdictional clash (the SMSC Tribal Court exercising its jurisdiction) is a harm in and of itself because it violates federal law and Minnesota law.  The Court notes that Lightfoot's Complaint in this matter does not address harm to the children, excepting references to the different determinations that the relevant courts could make as to division of the marital estate, child support, and spousal maintenance.  (*See* Compl. ¶¶ 1-95.)

---

[2]   Again, the Court notes that in light of the short time frame in this matter, it made a ruling from the bench on the instant motion on December 9, 2013.  The matter has since been heard by the SMSC Tribal Court, but that Court has not made a ruling at this time.

At this juncture, Lightfoot fails to present anything more than speculative harm, which is not enough to rise to the level of irreparable harm. *See Graham Webb Int'l v. Helene Curtis, Inc.,* 17 F. Supp. 2d 919, 924 (D. Minn. 1998) ("Possible or speculative harm is not enough."); *S.J.W. v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012). In fact, Lightfoot has failed to identify or present any evidence of what the irreparable harm to the children would consist of and has not identified that it is imminent or certain. For instance, the SMSC Tribal Court could[3] decline to address any issues beyond whether it has jurisdiction. If that is the case, the children would not suffer any harm. Even assuming that the SMSC Tribal Court were to render a decision determining issues of child custody, child support, spousal support, division of the marital estate, and dissolution of the marriage, this still would not show irreparable harm that is "certain and imminent such that there is a clear and present need for equitable relief." *Anytime Fitness, Inc. v. Fam. Fitness of Royal, LLC*, Civ. No. 09-3503, 2010 WL 145259, at *2 (D. Minn. Jan. 8, 2012) (citing *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996)). Finally, the *potential* erroneous exercise of jurisdiction is insufficient to establish irreparable harm to Lightfoot and the children. Both courts have yet to examine whether they have jurisdiction, and if they decide they do, there are a number of avenues to address jurisdictional disputes—a temporary restraining order is simply not one of them.

---

[3] *See supra* test in note 2.

Lightfoot has failed to establish irreparable harm, and so this factor weighs against granting a temporary restraining order.  With respect to irreparable harm, although not dispositive, failure to show irreparable harm is an adequate ground upon which to deny injunctive relief.  *Watkins Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted).  Therefore, the Court declines to issue a temporary restraining order on this factor alone at this time.

B.     **Likelihood of Success**

Though the irreparable harm analysis is sufficient grounds for the Court to deny the temporary restraining order, the Court will also briefly discuss the relevant remaining *Dataphase* factors.  *At this stage*, Lightfoot has not established a likelihood of success on the merits.  This factor requires that the movant establish a substantial probability of success on the merits of her claim.  *See Dataphase*, 640 F.2d at 114.

Plaintiff argues that there is a substantial likelihood that she will succeed on the merits because the laws, as they currently exist, are facially inconsistent, and the tribal court otherwise lacks jurisdiction.  Plaintiff argues that it is only this Court that has the power to address these facial inconsistencies on the basis of federal question jurisdiction.  The SMSC argues that this Court is devoid of any jurisdiction and that the tribal court does have jurisdiction.  The SMSC also argues that even if this Court did have jurisdiction, the SMSC has clear immunity in a case like the one at hand.  Both the SMSC and Thomas question whether the basis of Lightfoot's claims, 28 U.S.C. § 1360, even applies to Indian Tribes themselves (as opposed to individuals).

9

`CASE 0:13-cv-02985-DWF-JJK   Document 44   Filed 12/12/13   Page 10 of 11`

At the very least, Plaintiff has asserted a number of complex and highly contested jurisdictional issues in this case. And, while at this juncture, the Court declines to determine that it does not have jurisdiction, or that there must be exhaustion of the Tribal process and remedies, the substantial likelihood element has not been met. Lightfoot has failed to demonstrate that an inconsistency between the SMSC Domestic Relations Act and Minnesota state law definitively exists. It is entirely plausible that the laws and court actions could be wholly consistent, and until there is some demonstration that the SMSC will rule inconsistently with any other court or law, Plaintiff cannot show a likelihood of success on the merits.

Accordingly, the Court finds that this factor also weighs against granting a temporary restraining order.

### C. Balance of Harms and Public Interest

The third *Dataphase* factor to be considered is whether the harm to the movant in the absence of injunctive relief outweighs the potential harm that granting injunctive relief may cause to the non-movant; the final *Dataphase* factor is whether injunctive relief is in the public's interest. *See Dataphase*, 640 F.2d at 114. Addressing both factors, the Court finds that this case involves jurisdictional questions that could potentially have a far reaching impact on a number of different systems, courts, and individuals. At this early stage, and in light of the Court's findings above, the Court concludes that these factors also weigh against granting a restraining order on an emergency basis.

## CONCLUSION

For all of the reasons discussed above, the Court concludes that the balance of equities does not favor Plaintiff, and justice does not require the Court to intervene to preserve the status quo until the merits are determined. The Court notes, however, that this Order is not determinative of future motions, and there is no guarantee that the Court's current view of this case will stand depending on future orders from the SMSC Tribal Court, the British Columbia Supreme Court, or even Minnesota state courts, or any future motions, particularly as the record and arguments are supplemented and refined. More importantly, the Court reiterates its statements from the bench regarding the paramount importance of keeping the interests of the two children involved in this case, and the parents in this case, at the forefront of the parties' minds and actions. The Court strongly suggests that the parties make an attempt to resolve this case, and this Court joins the SMSC Tribal Court in the suggestion that mediation would likely serve not only the best interests of the parties, but also of their children.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Temporary Restraining Order (Doc. No. [29]) is **DENIED**.

Dated:  December 12, 2013            s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     United States District Judge